ARTEMAS B. KELLOGG

*v.*

HIRAM HASTINGS.

1. MISTAKE—*in description of land sold.* This was a bill in equity, to reform a deed of land, for mistake in the description. The court reviews the facts and circumstances, from which it finds that there was a mistake.

2. Where a certain tract of land is, in fact, sold and purchased, and is so conveyed, the deed can not be reformed, so as to make it convey a different piece, on the mere fact that the grantor, at the time, owned the latter. and not the former tract.

APPEAL from the Circuit Court of Cook county; the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

Mr. FRANCIS ADAMS, for the appellant.

Mr. SIDNEY SMITH, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a bill filed by Hastings, the appellee, to correct an alleged mistake in the description of premises in a deed to him from Kellogg, the appellant.

The bill alleges that Kellogg, being the owner of the south-east quarter of the south-east quarter of section 25, township 39 north, range 12 east of the third principal meridian, and the east half of the north-east quarter of the south-east quarter of the same section, situate in Cook county, Illinois, and intending and attempting to convey the same to Hastings,

executed a warranty deed to the latter; but that there was a mistake in the descriptive part of the deed, in this, that, instead of describing the latter tract as the *east half* of the north-east quarter of the south-east quarter of the section, it, by mistake, described it as the *south half* of the north-east quarter of the south-east quarter.

The court below decreed the relief prayed, and Kellogg has appealed.

Kellogg owned the east half of the quarter quarter section, and did not own the west half of the south half of the quarter quarter section. He admits that there was a mistake involved in the matter, but that the mistake was in his supposing that he owned the south half instead of the east half, and that the south half was the piece of land which was actually purchased and sold, and so intended. Were that the case, it would conclude the question. If the south half was the piece of land which was in fact sold and purchased, the deed could not be reformed, so as to make it convey the east half, on the ground that Kellogg did not own the former, and did own the latter tract.

According to the testimony adduced on the part Kellogg, he was, at the time of the making of the deed, in the actual occupancy and cultivation of the entire south half, and had it inclosed with a fence, built by himself, and the north half of the east half, being the ten acres in question, was uncultivated, unoccupied and uninclosed. This is the only testimony, aside from his own statement that he supposed he owned the south half, upon which Kellogg relies to show such a supposition on his part; and could the testimony be relied on as the truth, it would be strong proof to show that Kellogg was under the belief that the south half was the tract which he owned, and that that was the tract which was actually sold and purchased, and intended to be conveyed by the deed; but, to say the least, there is an equal weight of testimony, on the part of Hastings, that, at the date of the deed, the east half of the quarter quarter was inclosed with

a fence; that Kellogg neither occupied nor cultivated the west half of the south half, or had it inclosed with a fence, but that Peck and Dwyer, the owners of it, had a field upon it, which they cultivated, and that theirs was the only occupancy of it.

We shall not go into a review of the conflicting testimony. The undisputed facts of the case overbalance the testimony on the side of Kellogg, and satisfy us, beyond reasonable doubt, that Kellogg could not have supposed that the south half was the one which he owned, and that that was not the tract he sold and intended to convey, but that the east half. was the one.

The property, which was the subject of the sale, consisted of a tavern stand and farm combined, being sixty acres of ground, with a house kept as a hotel, and two barns and out-houses. Either description includes all the buildings.

Kellogg resided there from the fall of 1840 to that of 1853, when he made a written contract of sale to one Butler, who then took possession, and, afterward, sold to Hastings, assigning to him the contract, and the deed was made to Hastings as the assignee of the contract. All the remainder of the section was owned by Peck and Dwyer, who purchased about 1848 or 1849. The twenty acres constituting this east half was purchased by Kellogg and Peck in 1840, but the latter having sold his interest, the canal deed was issued to Kellogg in December, 1844. This deed described this east half, and Kellogg paid taxes on this twenty acres, taking tax receipts, for seven several years, describing it as the east half. The south-east quarter of the same quarter section was purchased subsequently by Kellogg, of the trustees of the Illinois and Michigan canal, the deed having been issued to him in October, 1853.

It is extremely improbable that a practical farmer, having so small a quantity of land, should purchase a forty-acre tract of land, for his own use, adjoining a tract of twenty acres, upon which he resided, and not know the location of the one tract

with reference to the other. The plats of the office at which he purchased would have informed him of it, and so would a plat of the section have shown it, which any one could have made for himself who had ordinary knowledge of the congressional sub-divisions of the public lands. The form of the east half, or the south half of the north-east quarter of the quarter section, would be that of a parallelogram eighty rods long and forty wide, and it would be a material fact, likely to be ascertained and known, whether its position with reference to the south-east quarter of the quarter section was lengthwise or endwise. In the former case, the two tracts would lie in a compact body, of regular shape; while in the latter case, they would make an irregularly shaped piece of land, with a notch in one corner, and the amount of fencing required to inclose it would be considerably increased.

It is strange that Kellogg should have labored under the mistake he claims, and stranger that other joint owners should also have been equally mistaken with him, as they must have been, in consistency with his position. Peck and he bought the twenty-acre piece, the half of the quarter quarter, together, in 1840, and Peck retained his interest until in 1843. Solomon Kellogg, the brother of appellant, was also interested with the latter in this twenty-acre piece until in 1852, when he parted with his interest. Appellant testifies that he and his brother Solomon, together, in the summer of 1843 or 1844, inclosed, with a rail fence, the field on the west half of the south half, which appellant states as made and cultivated by him. Here were these joint owners, Peck and Solomon Kellogg, to correct any mistake which appellant himself might have labored under in regard to the location of this land.

One Taylor served Kellogg with a written notice that the former had purchased the east half for the taxes of 1861. This notice Kellogg sent to Hastings.

Hastings testifies that, in 1851 or 1852, before Kellogg sold to Butler, he (Hastings) was out at Kellogg's place, and Kel-

logg wanted to sell it. Hastings said he would buy if Kellogg would take a house and lot in Chicago, which the former owned. Kellogg said he would take it if they could agree; that Kellogg did look at the house and lot, but they failed to agree. Hastings says, at that time Kellogg showed him his farm, and told him how his land lay; that Hastings asked him why he did not buy that twenty acres west, and make him an eighty; that Kellogg said he had intended to do so, and had an understanding with Peck and Dwyer that he should have it, but they bought it, and would not let him have it. Kellogg admits the conversation in regard to the purchase of the land, but denies that he showed Hastings how the land lay, or the shape of it, and also denies the talk with regard to Peck and Dwyer. Three other witnesses—one the son of Hastings, the other two entirely disinterested, so far as appears—testify to Kellogg having made to them, at separate times, substantially the same statement with regard to Peck and Dwyer, there being the same denial on the part of Kellogg. It is quite improbable, they having advanced so far toward a sale and purchase of the farm, and being there on the spot, that Kellogg should not have pointed out the land to Hastings, and how it lay.

Hastings, since the date of the deed, has paid all the taxes, and all his tax receipts describe this piece as the east half, except the one for 1870, which describes the south half as "assessed as east half," and the receipt for 1870 describes the south half.

Immediately upon the execution of the deed, Hastings went into the possession of the east half, and, in the following summer, rebuilt, as he and his son testify, the old fence around the east half, and ever since has had that entire tract under fence. Kellogg was frequently at the place—must have known of the occupancy and improvement, by Hastings, of this east half; and if Hastings was on the wrong half, as Kellogg must have seen that he was, according to Kellogg's

alleged supposition, Kellogg would naturally have informed Hastings of his mistake.

If the north half of the east half was vacant and uninclosed, and the entire south half was inclosed and cultivated by Kellogg, as he claims, and he supposed he owned and was really selling the south half, how came Hastings to go into the possession of the east half instead of the south half? How could it come that Hastings should have got a different idea from Kellogg of what was the subject of the sale? We perceive no reason why their understanding should not have been alike. Hastings clearly supposed he bought the east half. He must have derived his understanding from his own observation of the improvements, and from what Kellogg communicated to him, as well at the time of the negotiation for the purchase, in 1851 or 1852, as afterward, and what he may have learned from Butler.

Kellogg states that he was first informed of the mistake about the 20th or 24th of June, 1871. A deed was executed by Kellogg to Crawford, a brother-in-law, of this east half, bearing date June 24, 1871, for the expressed consideration of $2000. It is admitted by Kellogg that the consideration is only nominal, and that the deed was made in trust for the wife of Kellogg, though it is absolute on its face. This deed would seem to indicate a consciousness of a just claim on the part of Hastings to this land, and an attempt at its defeat by placing the property out of Kellogg's hands into those of an apparent purchaser for value.

The deed conforms to the written contract. There sufficiently appears to have been a mistake in the contract, of a single word, in describing this twenty acres, using the word "south," instead of the word "east." The mistake is a natural one, liable frequently to occur, as observation proves. The person who drew the contract is dead, as are also Peck and Dwyer, who owned the remainder of the section and the west half of this south half. A son of Peck, who was quite

familiar with the land, gives his testimony in support of Hastings' claim.

We are mindful of the rule which has been urged upon our attention in the argument, requiring great clearness of proof in such cases; but, as before intimated, we think its requirement has been met in this case, and that the decree of the court below was justified by the evidence.

The decree is affirmed.

*Decree affirmed.*